## 124 ISAACS v. BARBER

[No. 1296. Decided November 17, 1894.]

### HENRY P. ISAACS, *Respondent*, v. GEORGE H. BARBER *Appellant*.

WATERS UPON PUBLIC LANDS—RIGHTS OF PRIOR APPROPRIATOR—CUSTOM—JUDICIAL NOTICE.

The right of the prior appropriator to the use of water upon the public lands of the United States, as recognized by the Act of Congress of July 26, 1866, exists as a part of the laws and customs of the locality of Eastern Washington.

The right to prior appropriation of water upon the public domain for mining and other beneficial purposes has been established by a custom so universal that courts must take judicial notice thereof.

The operation of a flouring mill is one of the purposes for which water can be appropriated under the customary law of mining regions, adopted by the Act of Congress of 1866 (Stiles, J., dissents).

The right to appropriate water from streams upon the public domain in certain localities being a custom of universal acceptance, which the Act of Congress of July 26, 1866, did not bring into existence but merely recognized as already existing, persons acquiring title to portions of the public domain before the passage of such act, took the land subject to the rights of prior appropriators in the waters of streams running through or by such lands.

*Appeal from Superior Court, Walla Walla County.*

*Thomas H. Brents, Wellington Clark* and *M. M. Godman*, for appellant.

From the very nature of the right derivable from this source (prior appropriation of waters), it is limited to such portion or quantity as may have been actually taken, while the riparian lands were public lands of the United States and before the rights of others had attached to them, and appropriated to a useful purpose, and exists no longer than while this water is needfully, unwastefully and beneficially applied. *Peregoy v. McKissick*, 21 Pac. 967; *Atchison v. Peterson*, 20 Wall. 514; *Huston v. Bybee*, 20 Pac. 55; *Barrows v. Fox*, 30 Pac. 769; *Davis v. Gale*, 32 Cal. 27 (91 Am. Dec. 554). Indeed, after the rights of others have attached, the appropriator cannot enlarge his ditch or dam and thus increase his original appropriation. *Nevada Water Co. v. Powell*, 34 Cal. 118 (91 Am. Dec. 685); *Lobdell v. Simpson*, 2 Nev. 278; *Higgins v. Barber*, 42 Cal. 235; *Kelly v. Natoma Water Co.*, 6 Cal. 108. Moreover, where the use of the water appropriated is confined to certain days or months,

it cannot, after the rights of others have attached, be used at any other times. *Barnes v. Sabron*, 10 Nev. 245.

The assumption that respondent has shown any interest in this water as a prior appropriator under the provisions of the act of 1866 is wholly unfounded. That act, it is true, was passed for the preservation of pre-existing rights, which could otherwise be destroyed by the issuance of the government's patent; but these rights were such, and such only, as had their origin in, and were dependent for their existence upon, some local law or custom. No pretense is made in the case at bar of the existence, at any time, of any such local law or custom. None is pleaded; none is proven; none is found by either referee or court; and in the absence of such pleading and proof the court must apply the common law, which had been expressly adopted by our legislature and which gave no such right, as the only rule of decision governing the case. *Lux v. Haggin*, 69 Cal. 387, 390; *Esmond v. Chew*, 15 Cal. 137; *Lewis v. McClure*, 8 Or. 273; *Titcomb v. Kirk*, 51 Cal. 288; *Atchison v. Peterson*, 20 Wall. 511; *Jennison v. Kirk*, 98 U. S. 456; *Broder v. Water Co.*, 101 U. S. 274; *Sturr v. Beck*, 133 U. S. 552; *Heath v. Williams*, 7 Am. Dec. 272, note.

Moreover, had such local law or custom existed while these lands remained part of the public domain, and had respondent shown its existence and a compliance with its requirements, it could not help his case, since the issuance of the government's patent to Dodge on April 1, 1865, and before the passage of the act for the recognition and preservation of these dormant rights, carried the title to the land, with the riparian right to the water as an incident thereto, and effectually cut off all such supposed counter rights. *Union M. & M. Co. v. Ferris*, 2 Sawy. 176; *Union M. & M. Co. v. Dangberg*, 2 Sawy. 450; *Vansickle v. Haines*, 7 Nev. 249; *Lux v. Haggin*, 69 Cal. 339, 340, 344–361; *Sturr v. Beck*, 133 U. S. 551; *Jennison v. Kirk*, 98 U. S. 460.

*B. L. & J. L. Sharpstein* and *Crowley, Sullivan & Grosscup*, for respondent.

Since the early settlement of the Pacific Coast states and territories it has been held generally, that the right to water by prior appropriation for any beneficial purpose is entitled to protection, when made upon the public lands of the United states. By the policy of the government a license was given to settlers to utilize upon public lands the waters of streams for beneficial purposes. Water might be diverted to propel machinery in flour mills and saw mills, to irrigate land for cultivation, as well as to enable miners to work their mining claims, and in all cases the right of the first appropriator, exercised

within reasonable limits, was respected and enforced. This doctrine has been universally recognized in the decisions of the courts on the Pacific Coast, and has received the express sanction of the supreme court of the United States. This custom was expressly recognized by the legislation of Congress in the act of 1866. *Basey v. Gallagher*, 20 Wall. 670 ; *Broder v. Water Co.*, 101 U. S. 276 ; *Atchison v. Peterson*, 20 Wall. 507 ; *Forbes v. Gracey*, 94 U. S. 762; *Jennison v. Kirk*, 98 U. S. 453 ; *Hindman v. Rizor*, 27 Pac. 13 ; *Olmstead v. Loomis*, 9 N. Y. 423 ; *Barnes v. Sabron*, 10 Nev. 217 ; *Kirk v. Bartholomew*, 29 Pac. 40 ; *Jones v. Adams*, 19 Nev. 78 ; *Geddis v. Parrish*, 1 Wash. 587 ; Pomeroy, Riparian Rights, §§. 107–109.

The opinion of the court was delivered by

Hoyt, J.—This action was brought by respondent to restrain the defendant from interfering with a dam which had been erected for the purpose of diverting water from Mill Creek into a race, or flume, which led to his flouring mill. Defendant justified his action under a claim of the right to have the waters flow past his place situated on said creek between the point where the water was diverted and respondent's mill. Respondent claimed the right to divert the water, and founded such claim upon several distinct grounds. The cause was tried before a referee, who reported the testimony with his findings of fact and law. Such findings were set aside by the superior court, and new ones made as the foundation for the decree which was entered. Defendant, not being satisfied with such decree, prosecutes this appeal, and asks for a reversal, for the reason that the findings of fact were not warranted by the proofs and also because the facts found did not warrant the conclusions of law founded thereon.

We have carefully examined all the proofs, and although, upon some points, they are not as full as they should have been, we are not satisfied that they were insufficient to warrant every finding of fact made by the lower court. It follows that such findings must stand, and that in the light thereof the rights of the parties must be here determined.

It appears from such findings that the waters of Mill Creek were, in the year 1861, diverted by plaintiff into his mill race, and conducted to his mill for use as a propelling power to substantially the same extent as they are now

diverted, conducted and used. It, however, appears there-from that there had been a slight increase in the amount of water diverted at certain seasons of the year, and upon the fact of such increase that portion of the decree in favor of the appellant is largely based. We are not satisfied that the fact of such increase was established by the proofs, but the plaintiff not having appealed we are not called upon to investigate as to that portion of the decree adverse to him. It further appears from the findings that at the time the water was so diverted by the plaintiff, all of the land, on both sides of the creek from the place of its diversion to a point below the land now owned by the defendant, was a part of the public domain, and that it so remained until 1863, at which time the tract of which defendant's land is a portion was entered and purchased at private cash sale by one Artemus Dodge, who, in 1865, received a patent therefor. It further appears that said Dodge, prior to such entry, gave the plaintiff oral permission to conduct the water across the tract of land, and that George J. Dodge, to whom he deeded it, executed to plaintiff a written instrument in the shape of a lease formally conferring the right to so conduct the water by means of the race and flume as then constructed for the period of ninety-nine years; that the operation of the mill and the source of its power, and the means by which it was diverted from and conducted to the mill, were open and notorious, and known to every one in the vicinity, including said Artemus Dodge and those holding under him, including the defendant, and that no complaint was ever made in reference thereto until the year 1885.

Upon these material facts, among others, found by the court, respondent contends that as between himself and the defendant he is entitled to the use of the water for the purpose of propelling his mill to the extent to which he had used it from the time of its original diversion. He makes this contention for the reasons, first, that he is the owner of the water for the purpose of running his mill by reason of his prior appropriation thereof; second, that the grantors of the land, by the giving of the permission to construct the

flume, and the making of the lease, as above stated, and by standing by and seeing money expended by virtue of such permission and lease, estopped themselves, and those holding under them, from interfering with such flume, or the diversion of the water to effect which it was constructed ; and, third, that there had been such open, continuous and adverse user as to give title by prescription.

The first claim is met by the appellant by two principal propositions, one that it was not shown that any right to prior appropriation existed as a part of the law or local customs of the locality ; the other, that if the court could take judicial notice of the existence of such customs, or so find from the facts proven, they had no force as against the defendant for the reason that the grantor through whom he claims by *mesne* conveyance acquired title to the land by grant from the government prior to the passage of the act of congress of July 26, 1866. If the first proposition is determined adversely to appellant, he substantially concedes that the plaintiff would have been entitled to the use of the water appropriated in 1861, if the grant of the land of which his was a part had not been made by the government until after the passage of said act.

Each of these propositions raises questions of the utmost importance, and we have given them such careful consideration as our opportunities would allow, and have come to the conclusion that this state, or at least that portion of it east of the Cascade mountains, was included within the territory where the right to prior appropriation of water for mining and other beneficial purposes was recognized by the courts and the law-making power, and that such right was established by a custom so universal that courts must take judicial notice thereof.

We therefore hold that the right to prior appropriation as recognized by said act of congress existed as a part of the laws and customs of the locality. Such holding compels a consideration of the second proposition above suggested. It is argued by appellant that by absolute grant of the land before the passage of said act of congress, the title passed

with such riparian rights as were recognized by the common law of England, and that such rights having become vested before its passage could not be affected thereby. If the right to appropriate water from streams upon the public domain is derived from the passage of the act in question, and if before that time such acts of appropriation were, as against the government of the United States, trespasses upon the public domain, it is clear that this contention must be sustained. But in our opinion such was not the fact. The United States, as the owner of nearly all the lands in the locality where such use of the water was required, had the power to establish such rights in relation to its appropriation and use as it saw fit, and to the extent that it recognized such rights the common law in relation thereto was modified or abrogated. That this could be done by direct act of congress is not disputed by appellant, and we think it could also be done by such action on the part of the government as clearly disclosed its intention though not evidenced by act of congress, and that such modification or abrogation would have force as against the grant of the government, though not expressly embodied in the instrument or legislation by which the grant was made. If the action of the government was of such a nature as to evidence its intent to inaugurate such a modified system as to rights to waters upon the public domain, it was of such a nature as to convey notice, to all persons interested, of that fact. If from such action such intent could be presumed, it must be because it had substantially the same effect as direct legislation by congress ; and since every one must take notice of such legislation, they must likewise take notice of a practice having the force thereof.

The material question, therefore, is as to whether or not prior to the act of 1866 the practice in the locality referred to of appropriating the waters of running streams by means of their diversion for mining and other beneficial uses had been so sanctioned by the practice of the government that it had become lawful. It is not necessary for us to enter into any extended discussion as to this question, nor to en-

9-10W

large upon the situation of the localities in which the custom of so diverting waters prevailed, nor to speak of the absolute necessity of such customs, for the reason that the supreme court of the United States has ably discussed and fully decided the question. And such question is a federal one, upon which such decision is controlling in the courts of the states as well as in those of the United States.

A reference to a few cases will establish the above stated conclusions as to the position of said supreme court upon this question. In *Atchison v. Peterson*, 20 Wall. 507, Mr. Justice Field, speaking for the court, made use of the following language:

"By the custom which has obtained among miners in the Pacific states and territories, where mining for the precious metals is had on the public lands of the United States, the first appropriator of mines, whether in placers, veins, or lodes, or of waters in the streams on such lands for mining purposes, is held to have a better right than others to work the mines or use the waters. The first appropriator who subjects the property to use, or takes the necessary steps for that purpose, is regarded, except as against the government, as the source of title in all controversies relating to the property. As respects the use of water for mining purposes, the doctrines of the common law declaratory of the rights of riparian owners were, at an early day, after the discovery of gold, found to be inapplicable or applicable only to a very limited extent to the necessities of miners, and inadequate to their protection. * * * * This doctrine of right by prior appropriation, was recognized by the legislation of congress in 1866."

And in *Basey v. Gallagher*, 20 Wall. 670, the court, speaking by the same learned jurist, referring to the case of *Atchison v. Peterson, supra*, stated that, among other things it was held in that case " That the doctrine of the common law declaratory of the rights of riparian proprietors were inapplicable, or applicable only to a limited extent, to the necessities of miners, and were inadequate to their protection." And further on in the same case, after having reviewed several other decisions of the supreme court, and

speaking of the act of congress in question, the following language was used :

"It is very evident that congress intended, although the language used is not happy, to recognize as valid the customary law with respect to the use of water which had grown up among the occupants of the public land under the peculiar necessities of their condition."

And in *Forbes v. Gracey*, 94 U. S. 762, and in *Jennison v. Kirk*, 98 U. S. 453, the doctrine that said act did not create the rights therein referred to, but was simply in affirmation thereof, is distinctly recognized. And in *Broder v. Water Co.*, 101 U. S. 274, the court, speaking by that distinguished judge, Mr. Justice Miller, seems to have put this question fully to rest. He made use of the following pertinent language :

"It is the established doctrine of this court that rights of miners, who had taken possession of mines and worked and developed them, and the rights of persons who had constructed canals and ditches to be used in mining operations and for purposes of agricultural irrigation, in the region where such artificial use of the water was an absolute necessity, are rights which the government had, by its conduct, recognized and encouraged and was bound to protect, before the passage of the act of 1866. We are of opinion that the section of the act which we have quoted was rather a voluntary *recognition of a pre-existing right of possession*, constituting a valid claim to its continued use, than the establishment of a new one. This subject has so recently received our attention, and the grounds upon which this construction rests are so well set forth in the following cases, that they will be relied on without further argument."

Then follows a citation of the cases to which we have referred. This language, and that of the other cases, would seem to make it unnecessary that anything further should be said to show that in the opinion of the said supreme court the government had, by its acquiescence or consent, so recognized acts of this nature on the public domain as to make them lawful and a basis of right which the government and its grantees must respect.

It is true, as suggested by the supreme court of California, in *Lux v. Haggin*, 69 Cal. 255 (10 Pac. 674), that the exact question involved in the case at bar was not involved in any of the cases above cited, but the positive language used therein, and the emphasis of the proposition that the right was not created by the act of 1866 but simply recognized and continued, is sufficient to clearly show that such rights would have been protected as well before the passage of that act as after. If it was a right which it was worth while for the court to talk about, it was a vested right, and if a vested right, and of such a nature that every one must take notice thereof, it would not be taken away by any grant made thereafter, for the reason that the courts would construe such grant as though the right had been in express terms excepted from its force.

It has been held by all of the courts that have considered this question that after the passage of said act all grants must be construed in connection with the rights therein provided for, and such rights protected as above stated. There is no provision in the act for the protection of the rights therein recognized, and, if they existed before as well as after its passage, they were excepted from grants made after their inception, before such passage the same as after. It is only because of their existence as rights of which every one must take notice that they are held to modify grants thereafter made. And if rights under the statute thus modify grants, rights of the same nature established by acquiescence should also be held to modify such grants made after their acquisition.

There are decisions by the courts of some of the states which directly sustain the contention of the appellant, and go to the full extent of holding that where the grant took effect before the passage of the act in question, the rights acquired by the custom of the locality were lost unless expressly reserved by the terms of the grant. The principal case of this kind is that of *Vansickle v. Haines*, 7 Nev. 249, in which it was directly held, as above stated, after careful consideration, and nearly or quite all the other cases upon

the subject refer to this one and found their decision largely upon its authority. It follows that when this case was over-ruled by the court in which it was decided the authority of all of the cases upon that side of the question was greatly lessened.

In the case of *Jones v. Adams*, 19 Nev. 78 (6 Pac. 442, 3 Am. St. Rep. 788), in which the case above referred to was over-ruled, the court carefully reviews the whole question, and founds its holding to the effect that the rights should be given effect against grants before the date of the act of 1866 as well as after, not only upon a well considered course of reasoning, but also upon the fact that such was their understanding of the inevitable conclusion to be drawn from the language of the supreme court of the United States in the cases herein-before cited. Some of these decisions were founded upon the conditions which existed in a mining country, and related to the acquisition of mining interests, and the neces-sary water for the prosecution of the mining business, but enough appears to show that the same rule would apply as to the diversion of water for any other necessary and bene-ficial use. It does not follow, as has been well observed by Mr. Pomeroy, in his treatise on Riparian Rights, that the common law of England as to riparian rights has been abro-gated in the localities affected by the cases above referred to, but only that it has been so far modified as to give the rights acquired by virtue of the customs of the country force.

The United States, as owner of all of the domain, includ-ing the waters in its running streams, could by its legislation as applied thereto, or such acquiescence and practice as should be given the force of legislation, change the rule of the common law so far as it thought necessary, but it would not follow therefrom that if no rights had been acquired by virtue of the modification of the common law rule until after the land had passed from the government the common law rule would be at all affected thereby. On the contrary so soon as the government had parted with its title its right to change the rule in reference to the rights and incidents grow-ing out of the ownership of the land would be entirely deter-

mined, and its grantee would take his title burdened with all rights conferred by such action or consent on the part of the government.

The government, while the owner of the land, allowed the streams to be changed by the diversion of a portion of their waters. This had the effect of modifying the right to have the water flow in its natural channel except as to the portion not diverted at the time the title passed from the government, and it was only upon this portion that the common law rule could apply. The government had changed the streams, as it had the right to do by virtue of its ownership of all the land through which they flowed, and while they were so changed conveyed the land. It must follow that its grantees took title subject to the changed condition of the streams and to the rights growing out of such change.

In the case at bar the right to the use of the water had been fully acquired while the land now owned by the defendant was held by the government, and its grant of the same thereafter was subject to such right. It follows that plaintiff is entitled, as against the defendants, to have such right protected by the courts.

The conclusion to which we have come as to this question makes it unnecessary for us to discuss the other grounds upon which plaintiff seeks to found his right to divert the water.

Some criticism is made as to the form of the decree, but we think it sufficient to substantially protect the rights of both parties to the action. There is not as exact a measurement of the water to which the plaintiff is entitled as there might have been, but the substance of the decree in that regard is to establish and protect him in the use of the water necessary to run his mill as at present constructed, and for that reason we think it sufficient.

The decree of the superior court will be in all things affirmed. The respondent will recover his costs on appeal.

DUNBAR, C. J., and SCOTT, J., concur.

ANDERS, J., not sitting by reason of disqualification.

STILES, J., (*concurring*).—It will be found upon examination that all of the cases cited to sustain the doctrine of appropriation upon which the foregoing decision is based, were either mining or irrigation cases — such as arose out of the necessities of the surroundings. Mines could not be worked or lands cultivated in the arid regions without diverting the waters of the streams, and as the government's interest was that such enterprises be fostered while large areas of the public lands were still unsurveyed and not disposed of, the right to make permanent diversion of water was conceded prior to the act of 1866, as is held by the federal Supreme court. But this was the case of an ordinary flour mill, such as has been erected in every country over which the common law of England prevails. Every portion of the United States contains them, whether the country surrounding them be arid or not. West of the Cascade mountains they are as necessary and frequent as they are east of them, and there is no greater reason for conceding to them this right of permanent appropriation in one locality than in another. *Cessat ratio, cessat lex.* The peculiar circumstances demanding the concession made by the government not having existed for the support of this case of diversion, I hold that for it the concession cannot be admitted to have been made, and that the common law rule should prevail.

But in the case under consideration a sufficient reason existed for the judgment rendered in favor of the respondent; for the tract of land owned by appellant, at a point lower down on the stream than respondent's dam, is a part of the tract conveyed by the government to respondent's grantor; and when appellant received his conveyance the common grantor had for more than twenty years acquiesced in the appropriation made by respondent at a point upon his land. I therefore concur in the result.