**CARSON v. GENTNER.**

[52 Pac. 506; 43 L. R. A. 130]

WATERS—CONSTRUCTION OF STATUTES.—The local customs and decisions of Oregon and other western states that he who first changes the course of a natural stream flowing through public lands, which at the time was common to all, and appropriates the water to some useful purpose, thereby acquires a superior right to the same against every claimant except the United States, constitute a modification of the common law, which has been confirmed by both state and national legislation: Hill's Ann. Laws, § 3832 and Rev. Stat. U. S. § 2339.

PUBLIC LANDS—WATERS.—The reservation of vested rights of the owners of ditches provided for by Hill's Ann. Laws, §§ 4057-60, on the issue of patents for land by the state, is not the grant of a new easement, but the recognition of a pre-existing right.

RIGHT OF PRIOR APPROPRIATOR.—A prior appropriator of water from a natural stream flowing through state lands has such a vested right to the use of the water, and to the ditch in which it flows, also constructed on said lands, as will defeat the claim of one who, with notice of the diversion and existence of the ditch, obtains from the state a deed for the premises, without reservation of any water right.

WATERS—DITCH EASEMENT.— A prior appropriator who owns a ditch across lands subsequently patented by the state to another person, has the right to enter on such lands to clean and repair the ditch.*

From Josephine :   HIERO K. HANNA, Judge.

Suit by A. H. Carson against C. F. Gentner, and others, to enjoin defendants from interfering with plain-

*NOTE.—See this case in 43 L. R. A. 130 for a collection of authorities under the title right of an appropriator to enter upon the land of an upper proprietor to clean out a ditch.—REPORTER.

tiff's maintenance of a ditch constructed across their premises. Decree for plaintiff. Defendants appeal.

AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. Davis Brower.*

For respondent there was a brief over the names of *George W. Colvig* and *Robert G. Smith*, with an oral argument by *Mr. Colvig.*

MR. CHIEF JUSTICE MOORE delivered the opinion.

This is a suit to enjoin defendants from interfering with plaintiff's maintenance of a ditch constructed across their premises. The evidence shows that on December 23, 1859, the Surveyor-General of Oregon approved the plat of the survey of township 37 S., range 5 W. of the Willamette Meridian, whereupon the legal title to section 16 of said township and range became vested in the State of Oregon for the support of common schools : 9 Stat. 323 ; 11 Stat. 383. In 1868 one Lewis Strong constructed a ditch across the W. ½ of the N. E. ¼ of said section, and thereby diverted from Board Shanty Creek the waters thereof, which he used in working a mine in section 22, in said township and range ; but he having abandoned his improvements, plaintiff, on April 1, 1876, took possession thereof, and with the water flowing in the ditch continued the operation of the mine, during nearly every season, to the commencement of this suit. On November 21, 1883, defendants settled upon the land first above described, through which Board Shanty Creek flows, and thereafter obtained a deed from the State of Oregon for said tract which contained no reservation of

water rights. On November 30, 1892, plaintiff endeavored to go on defendants' land to repair said ditch, but they refused to permit him to do so, whereupon he commenced this suit for the relief hereinbefore stated. The defendants, after denying the material allegations of the complaint, allege that plaintiff never had any license from the State of Oregon to enter upon its school lands, nor had he or his predecessors any privity of interest with the state, by which he or they were authorized to construct or maintain said ditch across the land now owned by them, or to use the waters of said creek. The reply having put in issue the allegations of new matter contained in the answer, a trial was had, and the court found from the evidence that plaintiff was the owner of said ditch, and for more than sixteen years had been in the adverse possession thereof, and was entitled to use the same to carry the waters of Board Shanty Creek, of which he was also entitled to the use, and thereupon perpetually enjoined defendants from interfering with plaintiff's ownership of the ditch and right to enter upon their lands at all times when necessary to repair the same, from which decree defendants appeal.

The question presented for consideration by this appeal is whether a prior appropriator of water from a natural stream, flowing through state lands, has such a vested right to the use of the water and to the ditch in which it flows, also constructed on said lands, as will defeat the claim of one who, with notice of such diversion and existence of the ditch, obtains from the state a deed for the premises, without reservation of any water rights. Defendants' counsel contend that, prior to the appropriation complained of, the State of Oregon was a riparian owner of the land sought to be burdened with the easement, and entitled to have the waters of said stream continue to flow in its natural channel past said land; that

the state, prior to the act of February 24, 1885 (Hill's Ann. Laws, §§ 4057–4060), having conveyed to defendants said premises without reserving any water rights therein, they acquired by their deed the ditch constructed thereon, and also a usufructuary interest in the flow of the waters of said creek in its natural channel; and that plaintiff, not having had possession of the ditch, or the use of the water of said creek, for a period of ten years after defendants' entry, the court erred in restraining them from utilizing their own property. Plaintiff's counsel insist, however, that the ditch in question was constructed in pursuance of a license from the state, upon the faith of which labor and money were bestowed and expended thereon, thus rendering such license irrevocable, and that plaintiff, having been in the adverse possession of the ditch and water flowing therein for more than sixteen years, had in this manner acquired an easement in defendants' premises which entitled him to continue the use thereof unmolested by them.

The doctrine of the common law, that the water of a stream must continue to flow in its natural channel undiminished in quantity and unimpaired in quality, has been very much modified in the territory embraced in the Pacific Coast States, where a new rule, founded upon the necessities under which the early settlers labored, has been inaugurated. So much, only, of the common law was adopted by these settlers as was applicable to the condition of the country in which their lot was cast; and, realizing that water is a powerful agent in separating the precious metals from the baser materials in which they are imbedded, and also serves, when used in irrigating arid tracts, to cause the desert to bud, blossom and bear fruit, and that without the use of such water a vast region must forever remain valueless and uninhabited, necessity compelled these primitive lawgivers to

adopt for their government a code of customs which prescribed the extent of public land each was entitled to, and regulated the manner of appropriating water to the operation of mines and the cultivation of farms, orchards, and vineyards. This latter custom provided that he who first changed the course of a natural stream flowing through public lands, which at the time was common to all, and appropriated the water so diverted to some useful purpose, thereby acquired a superior right to continue the use thereof against every claimant except the United States. The justice of this custom was recognized by the courts, which enforced its provisions in opposition to the doctrine of the common law; and the legislative assemblies of these states, following the example set by the courts, have passed in many instances acts guaranteeing protection to prior appropriators in their possessory rights in the diversion of water against all claimants except the sovereign. The legislative action of this state on the subject is embodied in section 3832, Hill's Ann. Laws, approved October 24, 1864, which reads as follows: "Miners shall be allowed to make local laws in relation to the possession of water rights, the possession and working of placer claims, and the survey and sale of town lots in mining camps, subject to the laws of the United States."

The wisdom of this new rule was finally recognized by congress, which, on July 26, 1866, passed an act, the ninth section of which, so far as applicable to the case at bar, provides "that, whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of the courts, the possessors and owners of such vested rights

shall be maintained and protected in the same ; and the right of way for the construction of ditches and canals for the purposes aforesaid is hereby acknowledged and confirmed:'' 14 Stat. 251; Rev. St. U. S. § 2339. It has been repeatedly held that the provisions of the section just quoted only confirm to the owners of ditches and water rights on the public domain the same privileges which they enjoyed under the local customs, laws, and decisions of the courts prior to its passage : *Atchison* v. *Peterson*, 87 U. S. (20 Wall.) 507 ; *Basey* v. *Gallagher*, 87 U. S. (20 Wall.) 670 ; *Jennison* v. *Kirk*, 98 U. S. 453 ; *Broder* v. *Natoma Water Co.*, 101 U. S. 274.

The custom of appropriating water to a beneficial use has been limited by this court, which holds that the act of congress of July 26, 1866, applies only to government lands : *Curtis* v. *La Grande Water Co.*, 20 Or. 34 ( 23 Pac. 808, and 25 Pac. 378, 10 L. R. A. 484). Mr. Justice LORD, rendering the decision of the court in that case, and speaking of the diversion of the waters of a stream claimed to have been made in pursuance of the provisions of the Federal statute above quoted, says : '' While that act was passed a year later than the facts show the waters of the creek were diverted, yet it applies only to government land and streams flowing through it. In these, under the circumstances indicated in the act, the prior appropriation of the water may operate to secure a vested right to divert it, which shall be maintained and protected. But it has no application to the lands of individual owners, and, as against them, can confer no right to divert the waters of streams flowing through their lands.'' In *Alta Land and Water Co.* v. *Hancock*, 85 Cal. 219 ( 24 Pac. 645, 20 Am. St. Rep. 217 ) it is held that a stream flowing through the land of a riparian owner is an appurtenance thereto, which runs with the land as a corporeal hereditament, which might be segre-

gated by grant or condemnation, or extinguished by prescription, but it could not be defeated by simple appropriation. In *City of Santa Cruz* v. *Enright*, 95 Cal. 105 ( 30 Pac. 197 ), it was held that a riparian proprietor of private lands could not acquire any right by mere appropriation to the use of water flowing through his premises. In *Sturr* v. *Beck*, 133 U. S. 541 ( 10 Sup. Ct. 350 ), the facts were that in March, 1877, one John Smith settled upon a tract of public land in Dakota Territory through which False Bottom Creek flowed in a natural channel; that on March 25, 1879, he filed a homestead entry thereon, and, having made final proof in support of his claim on May 10, 1883, obtained from the United States a patent therefor, and in May, 1884, conveyed said tract to Beck; that in June, 1877, Sturr settled on an adjoining tract of public land, filed a homestead entry thereon May 15, 1880, and made final proof in support thereof on May 10, 1883; that on May 15, 1880, Sturr, without any grant from Smith, went upon the latter's claim, located a water right thereon, and constructed a ditch, by means of which he diverted the waters of said creek and appropriated the same to his claim. In a suit by such appropriator against the owner of the tract through which said stream flowed, to enjoin him from interfering with the ditch constructed thereon and the use of the water diverted thereby, it was held that the filing of a homestead entry for a tract of public land across which a stream flows in its natural channel, with no right or claim of right to divert the water therefrom, initiates a right to have the stream continue to flow in such channel without diversion, which ripens into a complete grant upon obtaining a patent therefor, which relates back to the date of filing, and thereby cuts off intervening adverse claims to the water. Mr. Chief Justice FULLER, in rendering the decision of the court,

says : " When, however, the government ceases to be the sole proprietor, the right of the riparian owner attaches, and cannot be subsequently invaded. As the riparian owner has the right to have the water flow ' *ut currere solebat*,' undiminished except by reasonable consumption of upper proprietors, and no subsequent attempt to take the water .only can override the prior appropriation of both land and water, it would seem reasonable that lawful riparian occupancy, with intent to appropriate the land, should have the same effect."

In *Vansickle* v. *Haines*, 7 Nev. 249, it was held that the rights of the defendant, a riparian owner, whose patent for public lands from the United States was issued without reservation of any water rights, and antedated the act of congress of July 26, 1866, was superior to the claim of plaintiff, a prior appropriator of the waters of a natural stream flowing through defendants' land. WHITMAN, J., speaking of plaintiff's claim as a prior appropriator, says : " He acquired no right against Haines, prior to the date of the latter's patent, which could affect that grant, because there was no title in Haines to be affected by acts of the respondent. He could acquire no right against the United States, for, as to that government, he was a trespasser, in that he diverted water from its lands not sought to be pre-empted by him. No presumption of grant arises against the sovereign, and no statute of limitation runs, save in some excepted instances, of which this is not one."

In *Broder* v. *Natoma Water Co.*, 101 U. S. 274, Mr. Justice MILLER, referring to the right of prior appropriation, says : " It is the established doctrine of this court that rights of miners, who had taken possession of mines, and worked and developed them, and the rights of persons who had constructed canals .and ditches to be used in mining operations and for purposes of agricultural

irrigation, in the region where such artificial use of the water was an absolute necessity, are rights which the government had by its conduct recognized and encouraged, and was bound to protect, before the passage of the act of 1866. We are of the opinion that the section of the act which we have quoted was rather a voluntary recognition of a pre-existing right of possession, constituting a valid claim to its continued use, than the establishment of a new one." In *Jones* v. *Adams*, 19 Nev. 78 (6 Pac. 442), plaintiff was awarded seven-tenths of the waters of a stream flowing through his land, and defendant, an upper riparian proprietor on said stream, the remaining three-tenths,—the trial court having found that each was the first appropriator upon his respective land. Plaintiff, relying upon the rule announced in *Vansickle* v. *Haines*, *supra*, contended that, inasmuch as the findings of the court showed that he obtained from the United States a patent for his land prior to the act of congress of July 26, 1866, he, as a riparian owner, was entitled to the flow of the waters of said stream in the channel thereof ; but HAWLEY, J., denying the point contended for, quotes with approval the above language of Mr. Justice MILLER in *Broder* v. *Natoma Water Co.*, and says : " The case of *Vansickle* v. *Haines*, in so far as the same is in conflict with the views herein expressed, is hereby overruled."

In *Lux* v. *Haggin*, 69 Cal. 255 (10 Pac. 674), it was held that the State of California, on September 25, 1850, became the owner of certain swamp lands situated within its borders ; that a prior appropriation of the waters of a stream flowing through such lands was defeated by a subsequent grant of the state of such lands, without reservation ; and that the rights of the state are not dependent upon or limited by the decision of the state courts with respect to controversies arising out of prior

appropriations of water from streams flowing through the public lands of the United States. The force of that decision is very much weakened, however, by the very able dissenting opinion of Ross, J., in which he says : " From the foundation of the state, waters pertaining to the public lands of both the Federal and State government have been appropriated and used for mining, agriculture, and other useful purposes. Such appropriation and use was first sanctioned by custom, next by the decisions of the courts, and, finally, by legislative action on the part of the United States, as well as the state. It thus became a part of the law of the land, of which every citizen was entitled to avail himself, and of which every purchaser from the United States, as well as the state, was bound to take notice. In protecting, therefore, the rights of the appropriators of water upon the public lands of the state and of the United States, no wrong is done to the purchasers from either government." Further on in the opinion the learned justice says : "The doctrine of appropriation thus established was not a temporary thing, to exist only until some one should obtain a certificate or patent for forty acres, or some other subdivision of the public land, bordering on the river or other stream of water. It was, as has been said, born of the necessities of the country and its people, was the growth of years, permanent in its character, and fixed the status of water rights with respect to public lands. No valid reason exists why the government, which owned both the land and the water, could not do this. It thus became, in my judgment, as much a part of the law of the land as if it had been written in terms in the statute books, and in connection with which all grants of public land from either government should be read. In the light of the history of the state, and of the legislation and decisions with respect to the subject

in question, is it possible that either government, State or National, ever contemplated that the conveyance of forty acres of land at the lower end of a stream that flows for miles through public lands should put an end to subsequent appropriations of the waters of the stream upon the public lands above, and entitle the grantee of the forty acres to the undiminished flow of the water in its natural channel from its source to its mouth? It seems to me entirely clear that nothing of the kind was ever intended or contemplated."

In *Krall* v. *United States*, 24 C. C. A. 543, 79 Fed. 241, 48 U. S. App. 351, the officers of the United States, in pursuance of a proclamation of the president in January, 1868, reserved six hundred and forty acres of land from the public domain in Idaho for a military post, through which a stream flowed, and from which a prior appropriation of the waters thereof was made for the use of the government. Thereafter plaintiff went upon the public lands and diverted and appropriated a certain quantity of the water of said stream from a point above the military reservation for the purpose of irrigating his own land ; and it was held that the prior appropriation of the government did not defeat the right of a subsequent appropriation by the citizen. Mr. Justice Ross, with whom Mr. Justice HAWLEY concurred, speaking for the majority of the court, says : " The creation of the reservation for military post purposes did not destroy or in any way affect the doctrine of appropriation thus established by the government in respect to the waters of the non-navigable streams upon the public lands. They continued subject to appropriation for any useful purpose. The appropriation of a part of those waters for the use of the military post secured it in the use of the portion so appropriated, but it did not take from others the right to make such appropriation above the reservation as

would not interfere with its prior appropriation." Mr. Justice GILBERT, however, relying upon a *contra* rule, which he maintains was established in the case of *Sturr* v. *Beck*, 133 U. S. 541 (10 Sup. Ct. 350), dissents from the conclusion reached by his associates.

The legislative assembly of Oregon passed an act, approved February 24, 1885, which granted to any individual or corporation a right of way over all lands belonging to the state, for the construction of water ditches, to be used for irrigation, manufacturing, or mining purposes, and provided that all patents issued by the state for any of its school, university, tide, swamp, or overflowed lands, should be subject to any vested rights of the owners of such water ditches: Hill's Ann. Laws, §§ 4057–4060. This statute was a legislative sanction, confirmatory of the customs of miners, and, like the act of congress of July 26, 1866, was the recognition of a pre-existing right, rather than the granting of a new easement in its real property. Without it the common law of the Pacific Coast States, applicable alike to the arid and mining regions, authorized the diversion of water flowing through public lands of the state, and an appropriation thereof for irrigating and mining purposes; and Strong, having taken advantage of this universal custom, made a diversion and appropriation, but, having abandoned his interest therein, his right reverted to the public, so that, in 1876, when plaintiff took possession thereof, it was the initiation of a new diversion and appropriation, but, having been made prior to defendants's settlement upon the state lands, it is superior to their interests therein, and hence plaintiff is entitled to the relief awarded, so far as it relates to an interference with his right to enter upon defendants' land to clean and repair the ditch.

Counsel for the defendants insist that the court erred

in its conclusion of law that plaintiff was entitled to the use of the water of Board Shanty Creek, claiming that this was not in issue ; but an examination of the answer shows that reference was made to this right, and that the question of such use was involved in the suit, and, this being so, the decree in that respect will not be disturbed.    It follows that the decree must be affirmed, and it is so ordered.

AFFIRMED.