Decided 31 July, 1899.

### POLEY *v.* LACERT.

[58 Pac. 37.]

1. JUDGMENT—EVIDENCE—RES JUDICATA.—A judgment for defendant in an action for damages by the purchaser of water rights against a third person for diverting water, is not even *prima facie* evidence of the purchaser's eviction and resulting damage in a subsequent action by the vendor to recover the purchase price.

2. MEANING OF WARRANTY.—A covenant to warrant and defend a title is an engagement to protect the vendee against all claims by the vendor and his heirs as well as against all paramount titles, but it is not an agreement to protect him against the tortious interference of third persons.

From Wallowa: ROBERT EAKIN, Judge.

Action by B. F. Poley against J. T. D. Lacert. Judgment for plaintiff, and defendant appeals.
                    AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Leroy Lomax.*

For respondent there was a brief and an oral argument by *Mr. D. W. Sheahan.*

MR. JUSTICE MOORE delivered the opinion of the court.

This is an appeal from a decree foreclosing a bond for a deed. The transcript shows that on March 26, 1895, plaintiff entered into a contract with defendant whereby he agreed, in consideration of the payment of $1,568, to sell and convey to him about six acres of land in Wallowa County, and, as appurtenant thereto, "the exclusive water right to sufficient water to operate one thirty-inch water wheel," placed in a sawmill on said land;

that the purchase price was evidenced by defendant's promissory notes, payable on the dates and for the respective sums as follows:  September 1, 1895, $500; December 1 following, $300;  August 1, 1896, $400;  and August 1, 1897, $368—each bearing ten per cent. interest per annum, and providing for the payment of a reasonable attorney's fee in case default should be made in the payment thereof—upon the delivery of which plaintiff executed a bond to defendant wherein he covenanted to convey the said land upon payment of the notes;  that defendant paid the note first maturing, but made default as to the others, whereupon this suit was instituted. The defendant, after denying the material allegations of the complaint, avers that the title to the water right agreed to be conveyed failed, and that from September 20 to December 20, 1895, he was deprived of the use of the water, to his damage in the sum of $1,800, which he prays may be offset against plaintiff's demand.  The allegations of new matter in the answer having been put in issue by the reply, a trial was had, and from the evidence taken thereat the court found that the defendant was deprived of the use of the water for the operation of his sawmill to its full capacity from September 20 to December 20, 1895, by reason of the acts of the Lostine Flour-Milling Company, a corporation, but that plaintiff was not a party to nor responsible for such acts; and decreed that plaintiff recover the sum of $1,068, with interest from March 26, 1895, at the rate of ten per cent. per annum, and the further sum of $100 as attorney's fees, and that said land be sold to satisfy the same.

The evidence shows that the milling company constructed a flour mill on the south fork of the Wallowa River, tapped the ditch which furnished water to defendant's mill at a point about one hundred yards above his head gate, and on September 1, 1895, diverted the water

from his mill, and conducted it in a ditch and flume to its own mill, about three-fourths of a mile from that of defendant; that about the twentieth of the same month the water became low in said stream, and remained so until about December 20 following, in consequence of which, and of said diversion, defendant was unable to operate his mill to its full capacity, and not at all for a part of that time; that on April 24, 1896, defendant commenced an action in the circuit court of said county against said company to recover the sum of $2,475 as damages alleged to have been sustained by reason of such diversion; that the company denied the material allegations of the complaint, set up new matter, and also filed a cross bill; and, the issues therein having been joined, it was stipulated that the suit and action should be tried together, and that the court should make its findings in the suit from the testimony given before the jury in the action. The court, however, took the advice of the jury in the equitable proceeding by submitting to them the following questions: ''First. Did Lacert know of the building of the flouring mill by the milling company, and the construction of the ditch, flume, and head gate by it at the time it was being done, and, knowing of it, did Lacert stand by or aid in the construction of the same, knowing that the milling company was so constructing the same for the purpose of operating the same by water power from said river through the said head gate and ditch, without protest or objection on the part of Lacert? Answer. Yes. Second. And, if so, did he have reason to believe that the milling company's use of the water might interfere with his? Answer. No. Third. Did the milling company know, or have any reason to believe, that Lacert had or claimed the water rights claimed by him in the law action? Answer. Yes.'' The jury found for the company in said action, whereupon the court gave

it judgment against Lacert for its costs and disbursements, and the court, having found in the suit that there were no equities with the milling company, dismissed the cross bill, and gave Lacert a decree for his costs and disbursements therein.

1. Defendant's counsel contend that their client's failure to recover damages in his said action affords conclusive evidence of the company's superior right to the use of the waters of said stream, and establishes the breach of plaintiff's contract and warranty, and, this being so, the court erred in not considering, in the case at bar, the damages which he sustained by reason of the diversion. The condition of the bond for a deed is that plaintiff will, upon the payment of said notes, make, execute, and deliver to the defendant a good and sufficient conveyance by warranty deed of said land, particularly describing it, "including the water rights and ditches connected therewith." Plaintiff was not a party to the action for damages, and hence is not bound by the judgment rendered therein. The decree of the court, based upon the special findings of the jury in the case of Lacert against the Lostine Flour Milling Company, rebuts any inference that defendant was evicted by title paramount, but, if it be assumed that his failure to recover judgment for the damages which he claims to have sustained is evidence of the breach of the condition of plaintiff's contract and warranty, the record in that case is not even *prima facie* evidence of an eviction against him, because he was neither a party nor a privy to the proceeding : *Graham* v. *Tankersley*, 15 Ala. 634 ; *Hanson* v. *Buckner's Ex'r*, 4 Dana, 254 ; *Sisk* v. *Woodruff*, 15 Ill. 15 ; *Rhode* v. *Green*, 26 Ind. 83 ; *Fields* v. *Hunter*, 8 Mo. 128 ; *Stephens* v. *Jack*, 3 Yerg. 403 (24 Am. Dec. 583).

2. His covenant to warrant and defend the title is equivalent to an engagement that he and his heirs will

never lay claim to the estate, and that they will defend
it if assailed by claims of a paramount title : *Stewart* v.
*West,* 14 Pa. St. 336. A covenant purporting to assure
the purchaser from disturbance on the part of the grantor,
"or any person or persons whomsoever," is not broken
by the tortious disturbances of third parties : *Playter* v.
*Cunningham,* 21 Cal. 229 ; *Meeks* v. *Bowerman,* 1 Daly, 99 ;
*Spear* v. *Allison,* 20 Pa. St. 200 ; *Kelly* v. *Dutch Church,*
2 Hill, 105 ; *Greenby* v. *Wilcocks,* 2 Johns. 1 (3 Am. Dec.
379); *Brick* v. *Coster,* 4 Watts & S. 494. But it is other-
wise where such acts are committed by the covenantor,
or by his agents or servants while acting under his direc-
tion : *Levitzky* v. *Canning,* 33 Cal. 299 ; *O'Keefe* v. *Ken-
nedy,* 3 Cush. 325 ; *Sedgwick* v. *Hollenback,* 7 Johns. 376.
The damage which defendant sustained by reason of the
acts of the Lostine Milling Company, so far as apparent
from the transcript before us, resulted from its tortious
acts in diverting the water to which he was entitled, but
it does not appear that plaintiff was in any way respon-
sible for the acts of the corporation. True, he was a
stockholder, but, not being an officer upon whom its
management devolved, he was not personally responsible
for its acts ; nor did he sanction the action complained of,
but, on the contrary, persuaded the manager to operate
the flour mill at night during a part of the time referred
to, enabling the defendant to operate his mill in the day-
time. Such evidence rebuts any presumption that might
arise by reason of plaintiff's interest in the corporation,
and, not being responsible for its tortious acts, there has
been no breach of the said warranty, and hence it fol-
lows that the decree is affirmed.          AFFIRMED.