Argued 17 July, decided 21 August, rehearing denied 23 October, 1906.

**PARKERSVILLE DRAINAGE DISTRICT v. WATTIER.**

86 Pac. 775.

JUDGMENT—RES JUDICATA—PARTIES CONCLUDED.

1. A judgment or decree, to be available as an estoppel barring a subsequent proceeding, must have been between the same parties or others in privity with them.

APPROPRIATION OF WATER—JUDICIAL NOTICE OF LOCAL CUSTOM.

2. In the case of a water appropriation on the public domain claimed under the act of Congress of July 26, 1866 (14 Stat. U. S. 253, c. 262, § 9), it is not necessary to offer evidence of local custom, as the right and method of appropriation was so universal that the courts know it by judicial notice: *Speake* v. *Hamilton,* 21 Or. 3, and *Brown* v. *Baker,* 39 Or. 66, followed; *Lewis* v. *McClure,* 8 Or. 274, overruled.

SWAMP LAND—WHEN TITLE PASSED TO THE STATE.

3. Under the congressional act of 1860, extending the benefit of the swamp land act to Oregon (12 Stat. U. S. 3, c. 5), the title to land claimed thereunder did not pass until the issuance of patents.

WATERS—USES OF APPROPRIATION.

4. Damming a stream on public land of the United States so as to overflow adjoining ground, and using the power thus obtained in operating a sawmill and flour mill was an appropriation of the right to use the water so impounded for "manufacturing purposes," within the meaning of the congressional act of July 26, 1866, now Rev. Stat. U. S. § 2339.

WATERS—RIGHTS OF APPROPRIATOR FOR MANUFACTURING.

5. Since the rights of those who had appropriated water from the public domain for manufacturing purposes prior to a conveyance thereof were protected by the act of congress of July 26, 1866 (14 Stat. U. S. 253, c. 262, § 9), and the rights of such persons were also protected against persons desiring to construct drainage ditches by the legislative act authorizing the digging of such ditches (Laws 1868, pp. 21, 22, § 9), a subsequent patent issued without reserving vested or accrued water rights does not affect them.

From Marion: WILLIAM GALLOWAY, Judge.

Statement by MR. JUSTICE MOORE.

This is a suit by the Parkersville Drainage District by S. W. Jones, Frank J. Bolter and L. D. Kelly, its trustees, against William Wattier and others, heirs of Vallier Wattier, deceased, to enjoin interference with the drainage of certain lands in Marion County. The complaint states that the plaintiff was duly organized July 14, 1904, as a drainage district, giving its boundaries, at which time the trustees named were elected, and that they are now its qualified and acting representatives; that at the easterly end of the district is situated lot 3 of section 7 in township 6 south, of range 1 west of the Willamette Meridian, which premises were conveyed to the State of Oregon by a patent of the United States dated July 24, 1904; that prior thereto the State of Oregon assigned all its right to such lot, which interest was reassigned to William P. Miller, and, notwithstanding the consideration therefor was fully paid, the State thereafter executed a deed of the premises to Vallier Wattier, now deceased; that Miller instituted a suit against Wattier, and such proceedings were had therein that, after substitution of parties plaintiff and defendant, in consequence of the death of each, it was decreed by the supreme court that Wattier's heirs held the legal title to the lot in trust for Miller's representatives (*Miller* v. *Wattier,* 44 Or. 347, 75 Pac. 209); that the lands in such district are all swampy, and in order to drain them the trustees named, on behalf of the district and of all parties interested therein, entered upon the lot mentioned, in the channel of Little Pudding River, and removed some of the natural obstructions, so as to make an outlet for the accumulated water standing on the greater part of the lands included in the district, whereupon the defendants threatened to interfere with such draining, and will do so unless restrained, thus preventing the water from flowing through the opening made, to plaintiff's irreparable injury. The answer denies the material allegations of the complaint and avers *inter alia* that the defendants are the owners in fee of certain real property, describing it, on which are erected a flouring mill and a saw-

mill, the machinery of which is operated by. water power, secured by building in such river a dam, whereby the water of that stream is retained and also backed up in Lake Labish, overflowing most of the lands in the alleged district; and that the right to maintain such easement was perfected in 1849 by their predecessor in interest, who appropriated the water of such lake and river pursuant to the local customs, laws and decisions of the courts, and as recognized and acknowledged by the United States and by the State of Oregon, which water has ever since that time been used in operating these mills. The cause was tried and the temporary injunction that had been issued when the suit was instituted was made perpetual, restraining the defendants from interfering with the draining of the lands in the district, and they appeal.    REVERSED.

For appellants there was a brief over the name of *George Greenwood Bingham,* with an oral argument by *Mr. Bingham* and *Mr. William Ewing Richardson.*

For respondent there was a brief with oral arguments by *Mr. William Henry Holmes* and *Mr. Webster Holmes.*

. MR. JUSTICE MOORE delivered the opinion of the court.

The questions presented by this appeal are whether or not the appropriation, as alleged in the answer, is valid and the evidence thereof adequate. The testimony shows that about 1849 a dam was built near the mouth of Little Pudding River, whereby the water thereof was retained and also backed up in what was originally called "Lake Labish," through a part of which that stream flows. This dam was about eight feet high and the backwater therefrom extended the surface of the lake four miles, making it in some places a half mile wide. In 1851 and the following year a sawmill and a flouring mill were respectively built near the dam, from which races were dug and the water in the pond was conducted therein to the mills, where it was used in operating them. In the winter the water is occasionally so high, and in the summer it is sometimes so low, as to prevent the manufacture of lumber or flour, but, except at such stages of the river, the mills referred to have been continu-

ously operated ever since they were built, and the property, including the alleged water right, has become quite valuable, averred to be worth $25,000. The water in the pond that is raised by the dam covers about 1,875 acres of land, which, if drained, would undoubtedly prove very productive, for it has been for many years enriched by alluvial deposits. Some of the lands at the head of the lake have been drained by conducting the water into the Willamette River, and the premises thus reclaimed are valued at about $75 an acre. If it be conceded that all the lands in the district and now covered by the water in the pond are equal in value to the premises that have been drained, a moment's calculation will demonstrate the magnitude of the interests involved and the importance to the persons affected thereby of any decree that may be rendered herein. The plaintiff's trustees having secured a resurvey of lot 3 in the section named, and considering that a part of the defendants' dam was built thereon, destroyed such piece with dynamite, thereby permitting much of the water in the pond to flow out, and then commenced this suit to enjoin the restoration of the dam.

1. It will be remembered that the complaint states that it was decreed by this court that the defendants herein held the legal title to the land at the outlet of the pond in trust for Miller's representatives: *Miller* v. *Wattier,* 44 Or. 347 (75 Pac. 209). An examination of that case will show that on April 9, 1872, the Board of Commissioners for the Sale of State Lands sold the lot mentioned as swamp land to John F. Miller, and though his assignee, William P. Miller, paid the consideration therefor, the board, on January 9, 1893, executed a deed of the premises to Vallier Wattier. At the trial of this cause the plaintiff offered in evidence a certified copy of the judgment roll in the case of *Wattier* v. *Miller,* 11 Or. 329 (8 Pac. 854), wherein it was decreed by this court that the ancestor of the defendants herein, as owner of the soil on which his mills stood, had acquired no right by prescription to turn the water of Little Pudding River back upon the land of a proprietor above him.

Neither the decree in that case nor in the case of *Miller* v. *Wattier*, 44 Or. 347 (75 Pac. 209) is pleaded as an estoppel in the case at bar. As estoppels must be mutual, neither decree mentioned constitutes a bar to the maintenance of the defense of an appropriation of the water now interposed; for, so far as we are able to discover, there is no privity of any kind existing between the plaintiff herein and either of the parties to the former suits, and unless the subsequent suit is between the same parties or their privies the decrees theretofore rendered are not *res judicata:* 24 Am. & Eng. Enc. Law (2 ed.), 724; *Morrison* v. *Holladay,* 27 Or. 175 (39 Pac. 1100) ; *Landigan* v. *Mayer,* 32 Or. 245 (51 Pac. 649, 67 Am. St. Rep. 521) ; *Mullaney* v. *Evans,* 33 Or. 330 (54 Pac. 886) ; *Poley* v. *Lacert,* 35 Or. 166 (58 Pac. 37) ; *Baring* v. *Fanning,* Fed. Case No. 982.

2. Considering the sufficiency of the evidence, as the defendants offered no testimony tending to prove the averment of their answer that the alleged appropriation of the water was made pursuant to any custom, etc., plaintiff's counsel, invoking the doctrine announced in *Lewis* v. *McClure,* 8 Or. 274, insist that no foundation was laid for the establishment of the right which they assert. In the case to which attention is called it is held that when a party alleges a right to appropriate water pursuant to a local custom and such averment is denied, the burden is thus imposed on the party alleging the fact to prove it, and for a failure in this respect the court would not take judicial notice of such custom. In *Brown* v. *Baker,* 39 Or. 66 (65 Pac. 799, 66 Pac. 193) it was ruled that a failure to allege or prove that a diversion of water was made in accordance with local custom, etc., did not defeat the right of appropriation. One person could not well establish a valid custom, and to hold that an allegation that an appropriation of water to a beneficial use was made conformable to custom and to require proof thereof, as prerequisites of an exercise of the right, would be equivalent to a denial of the use of water to the first settler in a new section of the arid country. We believe that the reference to the local custom, etc., specified in Act Cong. July 26, 1866, 14 Stat. U. S. 253, c. 262, § 9 (Rev. Stat. U. S. § 2339;

7 Fed. Stat. Ann. 1090; U. S. Comp. St. 1901, p. 1437), was equivalent to a legislative declaration that the salutary provisions of the federal law were applicable only to the Pacific Coast states, leaving it to the court to take judicial notice of such territory and custom without allegation or proof thereof. The correct rule, in our opinion, is stated by Mr. Justice HOYT, in *Isaacs* v. *Barber,* 10 Wash. 124 (38 Pac. 871, 30 L. R. A. 665, 45 Am. St. Rep. 772), where, in discussing the subject of an application of water to a beneficial use, he says "That such right was established by a custom so universal that courts must take judicial notice thereof." To the same effect is *Speake* v. *Hamilton,* 21 Or. 3 (26 Pac. 855). We conclude, therefore, that the doctrine announced in *Lewis* v. *McClure,* 8 Or. 274, no longer prevails in this State, and that the averment in the answer that the appropriation was made according to local custom, etc., might have been rejected as surplusage, and hence no necessity existed to offer any proof in support thereof: *Gregoire* v. *Rourke,* 28 Or. 275 (42 Pac. 996).

These preliminary matters having been disposed of, the question of whether or not the water of Little Pudding River and of Lake Labish was subject to a valid appropriation, will next be considered. The application for the establishment of the Parkersville Drainage District presented to the county court of Marion County, a copy of which was offered in evidence, shows the area of land claimed to have been owned by the several petitioners, but whether their title was derived immediately or mediately from the United States is not disclosed, except as to such lot 3, which was conveyed as alleged in the complaint, but the patent therefor contained no clause exempting from its operation any accrued or vested water right. The deed executed for such lot by the State of Oregon to Vallier Wattier, from whom Miller's representatives derive their title by decree of this court, was not offered in evidence, so it is impossible to specify whether or not the state reserved any water rights from the operation of its conveyance of the premises. We shall take it for granted, however, that no such reservation was made, and shall further assume that all the real property in the drain-

(48th Or.—22)

age district is swamp land, within the meaning of that term as used in the act of Congress, and that the transfer of the title to the several owners is evidenced in the same manner as in the conveyance of such lot.

3. Congress on March 12, 1860, passed an act granting to the State of Oregon the swamp and overflowed lands within its borders: 12 Stat. U. S. 3, c. 5. Though such act was a grant *in praesenti,* the premises designated had to be identified as swamp and overflowed lands, and hence the title thereto remained in the United States until a patent therefor was issued: *Michigan Land & L. Co.* v. *Rust,* 168 U. S. 589 (18 Sup. Ct. 208, 42 L. Ed. 591); *Small* v. *Lutz,* 41 Or. 570 (67 Pac. 421, 69 Pac. 825).

4. Congress on July 26, 1866, passed an act from which the following excerpts are taken: "Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; and the right of way for the construction of ditches and canals for the purpose herein specified is acknowledged and confirmed; but whenever any person, in the construction of any ditch or canal, injures or damages the possession of any settler on the public domain, the party committing such injury or damage shall be liable to the party injured for such injury or damage": Rev. Stat. U. S. § 2339 (7 Fed. Stat. Ann. 1090). "All patents granted, or pre-emptions or homesteads allowed, shall be subject to any vested and accrued water rights, or rights to ditches and reservoirs used in connection with such water rights, as may have been acquired or recognized by the preceding section": Rev. Stat. U. S. § 2340 (U. S. Comp. St. 1901, p. 1437; 7 Fed. Stat. Ann. 1096).

The legislative assembly of this State in 1868 passed an act (Laws 1868, pp. 21, 22, § 9) authorizing the drainage of land, which contains the following provision:

"This chapter shall not be construed so as to interfere with

the rights of companies or individuals for mining, manufacturing, or watering towns or cities": B. & C. Comp. § 4368.

In 1885 an act was passed granting to individuals and to corporations rights of way over swamp and other lands belonging to the State, to construct ditches for manufacturing purposes: B. & C. Comp. § 3338.   In 1899 another law was enacted which provided that all existing appropriations of water for beneficial purposes should be respected and upheld, "nor shall any existing mill be deprived of its water power, however lawfully acquired, without the consent of its owner": B. & C. Comp. § 5032.   These provisions are mentioned to illustrate the very liberal policy pursued by the legislative assembly in recognizing the rights of settlers to divert and use the water flowing through the lands owned by the State of Oregon.   The act of Congress of July 26, 1866, authorizing the diversion of water from streams flowing through the public domain, was the acknowledgment of a previous right instead of the creation of a new one: *Atchison* v. *Peterson,* 87 U. S. (20 Wall.) 507 (22 L. Ed. 414) ; *Basey* v. *Gallagher,* 87 U. S. (20 Wall.) 670 (22 L. Ed. 452) ; *Forbes* v. *Gracey,* 94 U. S. 762 (24 L. Ed. 313) ; *Jennison* v. *Kirk,* 98 U. S. 453 (25 L. Ed. 240) ; *Broder* v. *National Water Co.* 101 U. S. 274 (25 L. Ed. 790).   In *Carson* v. *Gentner,* 33 Or. 512 (52 Pac. 506, 43 L. R. A. 130), the plaintiff maintained a ditch across certain lands owned by the State of Oregon which it thereafter conveyed to the defendants without reserving any accrued or vested water rights from the operation of the deed.   The defendants having intermeddled with the ditch, it was held, in a suit to enjoin such interference, that the plaintiff had the right to enter upon their premises to repair the conduit.   In referring to what is now incorporated in B. & C. Comp. as Section 3338, and alluding to the policy of the State of Oregon in enacting the clause hereinbefore quoted, it was said: "This statute was a legislative sanction, confirmatory of the customs of miners, and, like the act of Congress of July 26, 1866, was the recognition of a preexisting right, rather than the granting of a new easement in its real property."

The doctrine, once declared, that the rights of a riparian proprietor who had secured from the United States a patent for land before the passage of the act of Congress of July 26, 1866, thereby defeated the claims of a prior appropriator of the water of a stream flowing through such lands (*Vansickle v. Haines,* 7 Nev. 249), has been expressly overruled: *Jones v. Adams,* 19 Nev. 78 (6 Pac. 442, 3 Am. St. Rep. 788). The rule adopted in the case last cited was followed in *Isaacs v. Barber,* 10 Wash. 124 (38 Pac. 871, 30 L. R. A. 665, 45 Am. St. Rep. 772), where it was held that a valid appropriation of water could be made to operate a flouring mill east of the Cascade Mountains in the State of Washington, Mr. Justice HOYT saying: "The government, while the owner of the land, allowed the streams to be changed by the diversion of a portion of their waters. This had the effect of modifying the right to have the water flow in its natural channel except as to the portion not diverted at the time the title passed from the government, and it was only upon this portion that the common-law rule could apply. The government had changed the streams, as it had the right to do by virtue of its ownership of all the land through which they flowed, and while they were so changed conveyed the land. It must follow that its grantees took title subject to the changed condition of the streams and to the rights growing out of such change." The discovery of gold in California first gave rise to the custom, established by miners, of using the water of streams flowing through public lands to separate precious metal from the baser material in which it was found, and as this work could not be profitably performed except by such means, the right to divert water for that purpose was founded on the principle of necessity. Thereafter the use of water from such streams was extended to agriculture, manufacturing and other purposes, but the right to such enlarged uses was based on the exigency therefor. At the time the mills now owned by the defendants were built, the manufacture of lumber and of flour supplied the urgent demands of the pioneers who had come to Oregon to found homes. The grinding of grain and the sawing of logs would probably not create the excite-

ment that gold mining affords, but such manufactures sub-
served the needs of humanity and conduced to the comforts of
mankind to such an extent that they may safely be classed as
being necessities at the time the mills were erected.  Based on
principle, we believe that such early, pressing want impels the
deduction that the right to appropriate water to manufacture
flour and lumber in the Willamette Valley during the original
settlement thereof, and the authority to create and maintain
reservoirs to generate power, comes clearly within the provis-
ions of the act of Congress of July 26, 1866.

The evidence shows that in surveying the donation land
claim on a part of which the defendants' mills are erected, Lake
Labish was meandered so as to conform to the margin thereof
as made by the backwater from the dam in Little Pudding
River.  The lot mentioned was thereafter surveyed and, assum-
ing that all the lands in the drainage district are of the same
kind and the titles thereto were derived from the same sour,-e
and pursuant to the same act of Congress as the premises owned
by Miller's representatives, all the persons affected by the back-
water evidently secured their lands with knowledge of the
encroachment thereon.

5. It will be observed, by a comparison of the dates, that
prior to the sale of such lot to John F. Miller by the State of
Oregon, its legislative assembly had enacted that the provisions
of the chapter authorizing the creation of drainage districts
should not interfere with the right of manufacturing.  This act
was a recognition of pre-existing rights of prior appropriators
of which the purchasers of swamp lands which were artificially
overflowed were obliged to take notice, and this being so, it is
immaterial whether the title to such lands passed to the State
of Oregon, or whether the United States held the title in trust
for the State, or for the use and benefit of the general govern-
ment, for in either case the rights of the defendants as the
successors in interest of the original appropriator were pro-
tected, notwithstanding the patent did not reserve any vested
or accrued water right: *Carson* v. *Gentner*, 33 Or. 512 (52 Pac.
506, 43 L. R. A. 130) ; *Jones* v. *Adams,* 19 Nev. 78 (6 Pac.

442, 3 Am. St. Rep. 788) ; *Isaacs* v. *Barber,* 10 Wash. 124 (38 Pac. 871, 30 L. R. A. 665, 45 Am. St. Rep. 772).

It follows from these considerations that the decree should be reversed and the suit dismissed, and it is so ordered.

<div align="right">Reversed.</div>

<div align="center">

Decided 2 January, 1906, rehearing allowed.
Decided on reargument 21 Aug., further hearing denied 23 Oct. 1906.
**SEXTON *v.* McINNIS.**
82 Pac. 1135, 86 Pac. 778.