Argued October 14, decided December 8, 1908.

## DAVIS v. CHAMBERLAIN.

[98 Pac. 154.]

PLEADING—DEFENSES—INCONSISTENT DEFENSES.

1. In a suit to restrain the use of water, claims by defendants, as riparian owners, and by adverse user, are not inconsistent.

PUBLIC LANDS—ENTRIES—EVIDENCE—CERTIFICATE OF FINAL ENTRY.

2. The certificate of final entry of land issued by the United States land office. is evidence of the facts recited therein, including the date on which settlement was made.

WATERS AND WATER COURSES—RIGHTS IN PUBLIC LAND—PRIOR APPROPRIATION.

3. Settlers on public land, by appropriating water for irrigation, acquire a right thereto against subsequent settlers, and by reason of their priority of appropriation, waived their riparian rights to the water.

PUBLIC LANDS—ELECTION—APPROPRIATOR OR RIPARIAN PROPRIETOR.

4. A settler upon public lands through which a nonnavigable stream flows, has an election, and may claim by appropriation or rely upon his rights as riparian proprietor; but he cannot do both.

WATERS AND WATER COURSES—IRRIGATION RIGHTS—ABANDONMENT.

5. The owners of a mining ditch, who took water therefrom for irrigation, by leasing their interests therein, abandoned their irrigation rights in the ditch.

WATERS AND WATER COURSES—APPROPRIATION—DURATION.

6. An appropriation of water is limited, in quantity as well as in time, to the extent of the appropriation, and, where water was taken from a ditch for mining only through the winter months up to June 1st, the right of appropriation was limited to that period.

WATERS AND WATER COURSES—PRESCRIPTION—ADVERSE CHARACTER OF POSSESSION.

7. Where defendants used the water from a ditch continuously for 12 or 15 years prior to the commencement of a suit, the owner knowing that the water was being diminished by their use, but not consenting thereto, their use was adverse so as to give them title.

WATERS AND WATER COURSES—APPROPRIATION—EFFECT OF APPROPRIATION AS AGAINST SUBSEQUENT PATENT.

8. Though land was patented prior to Act Cong. July 26, 1866, c. 262, § 9, 14 Stat. 253 (U. S. Comp. St. 1901, p. 1437), protecting the rights of prior appropriators of water on public land, a prior appropriator of water therefrom would be protected as against the patentee: the statute being merely a recognition of the rights of the prior appropriator.

JUDGMENT—RES JUDICATA—PLEADING—NECESSITY.

9. In order to avail himself of a former decree restraining defendant's predecessors in interest from diverting water from plaintiff's lands, as a defense against defendant's claims, plaintiff must plead the former decree; it being in the nature of an estoppel.

JUDGMENT—CONCLUSIVENESS—MATTERS CONCLUDED—IDENTITY OF SUBJECT-MATTER.

10. Where a decree in favor of plaintiff, restraining defendant's predecessor in interest from diverting water from a creek above plaintiff's land, was

based on plaintiff's riparian rights, and it did not appear that the defendant therein owned any land, or as to what land he was restrained from diverting the water, the decree was personal, and there could be no successor in interest of the defendant therein whom it could affect, and for the same reason it would not operate in favor of plaintiff's successor in interest.

JUDGMENT—BAR—CONCLUSIVENESS—IDENTITY OF CAUSE OF ACTION—SUBJECT-MATTER.

11. Where a decree restraining defendant's predecessor in interest from diverting water from a creek above plaintiff's land was based on the latter's riparian rights, it would not protect any rights based on prior appropriation now claimed by him against defendant.

WATERS AND WATER COURSES—PRESCRIPTION—ADVERSE CHARACTER OF POSSESSION.

12. A use of water is not adverse until it becomes hostile to another's rights and interferes with such rights so as to give the person injured a right of action for the interference.

WATERS AND WATER COURSES—APPROPRIATION OF RIGHTS IN PUBLIC LAND—APPROPRIATION CONCURRENT WITH SETTLEMENT.

13. If the appropriation of water from a ditch was concurrent with settlement upon the land above the ditch, the rights of the appropriator were superior to the riparian rights of the settler.

From Jackson: HIERO K. HANNA, Judge.

This is a suit by Allen Davis and others against H. M. Chamberlain and others, to restrain defendants and each of them from diverting any water from Wagner Creek, a tributary of Bear Creek, in Jackson County, Oregon, above the head of plaintiff's ditches.

From a decree in favor of plaintiffs, a part of defendants appeal.                MODIFIED.

For appellants there was an oral argument by *Mr. Winsor W. Calkins,* with a brief over the names of *Winsor W. Calkins* and *Frank M. Calkins,* to this effect:

A patent for lands, issued by the United States government prior to the statute of 1866, conveyed to the patentee such lands, with all riparian rights: *Van Sickle* v. *Haines,* 7 Nev. 249; *Lux* v. *Haggin,* 10 Pac. (Cal.) 674; *Union Mill & Mining Co.* v. *Ferris,* 2 Sawy. 176; *Union Mill & Mining Co.* v. ———, 2 Sawy. 450; *Ison* v. *Nelson Mining Co.* 47 Fed. 199.

*Contra, Jones* v. *Adams,* 19 Nev. 78 (6 Pac. 442); *Isaacs* v. *Barber,* 38 Pac. (Wash.) 871; *Parkersville Drainage District* v. *Wattier,* 48 Or. 332 (86 Pac. 775).

A patent for lands issued by the United States government relates back to the original settlement on the land by the settler, and cuts off water rights initiated subsequent to such settlement: Farnham, Waters (1 ed.), Vol. 3, § 658; *Faull* v. *Cook*, 19 Or. 455 (26 Pac. 662); B. & C. Comp. § 342; *Sturr* v. *Beck*, 10 U. S. Sup. Ct. Rep. 350; *Parkersville Drainage District* v. *Wattier*, 48 Or. 332 (86 Pac. 775).

To constitute an appropriation of water there must be an intent by the appropriator to make an appropriation: *Rose* v. *Mesmer*, 75 Pac. (Cal.) 905.

The riparian rights of a settler on public land, whose settlement afterwards ripens into title, cuts off all subsequent appropriations; and appropriations, if any, made subsequent to the initiation of such right, are inferior and subject thereto: Farnham, Waters (1 ed.), Vol. 3, p. 2053; *Lewis* v. *McClure*, 8 Or. 273; *Brown* v. *Baker*, 39 Or. 66; *McCall* v. *Porter*, 42 Or. 49; *Parkersville Drainage District* v. *Wattier*, 48 Or. 332 (86 Pac. 775).

There can be no prior appropriation of water unless the stream from which the water is taken is non-riparian: *Curtis* v. *La Grande*, 20 Or. 34; *Browning* v. *Lewis*, 39 Or. 11; *Brown* v. *Baker*, 39 Or. 66; *Santa Cruz* v. *Enright*, 30 Pac. (Cal.) 197.

Where property is sought to be bound by a judgment, it must be accurately described: *Barnham* v. *Hostetter*, 7 Pac. (Cal.) 689.

A judgment is conclusive by way of estoppel only as to facts without the existence and proof, or admission of which, it could not have been rendered. And a judgment by default admits the truth of every material allegation in the complaint: Black, Judgments (1 ed.), Vol. 2, § 615: *Philbrick* v. *O'Connor*, 15 Or. 15.

For respondents there was an oral argument by *Mr. Allen E. Reames,* with a brief over the names of *Reames & Reames,* to this effect:

One who has first appropriated water from a flowing stream and has devoted it to a beneficial use for a long period of years has a vested right thereto, with which a subsequent appropriator cannot interfere. He has the right to use the water and have it come to him to the extent of his first appropriation, provided he has always used for beneficial purposes the same amount of water as he first appropriated: *Salt Lake City* v. *Salt Lake City Water Co.* 24 Utah, 249; *Isaac* v. *Barber,* 10 Wash. 124; *Wadsworth* v. *Tillotson,* 15 Conn. 366; *Buddington* v. *Bradley,* 10 Conn. 213; *Williams* v. *Wadsworth,* 51 Conn. 277; *Ingraham* v. *Hutchison,* 2 Conn. 592; *Schilling* v. *Rouniger,* 4 Colo. 100; *Basey* v. *Gallagher,* 87 U. S. 452; *Drake* v. *Earhart,* 2 Idaho, 716; *Farley* v. *Spring Valley,* 58 Cal. 142; *Ellis* v. *Pomeroy Improvement Co.* 1 Wash. 572; *Geddis* v. *Parish,* 1 Wash. 587; *Jones* v. *Adams,* 19 Nev. 78; *Jerrett* v. *Mahon,* 20 Nev. 89; *Hamond* v. *Rose,* 11 Colo. 524; *Clough* v. *Wing,* 17 Pac. (Ariz.) 453; *Reno Smelting Co.* v. *Stevenson,* 20 Nev. 269.

Where an appropriator enters upon the public domain of the government and begins in good faith the construction of a ditch for the purpose of irrigation, and completes the appropriation and uses the water for that purpose within a reasonable time, the date of the appropriation will extend back to the time that the first work was done on the ditch: *Morgan* v. *Shaw,* 47 Or. 336.

In Oregon the common law doctrine of riparian rights has been much modified by the rule of prior appropriation: *Morgan* v. *Shaw,* 47 Or. 337; *Brown* v. *Baker,* 39 Or. 66.

An appropriation of water is a grant by the general government to the settler of the right to its use from a non-navigable stream, to the injury of all public land above the point of diversion, which may be within or beyond the boundaries of the settler's claim: *Morgan* v. *Shaw,* 47 Or. 337.

Where an upper riparian proprietor for a long period of years allows the waters of a stream to pass to the

prior appropriator below, it constitutes a recognition of the right of the lower appropriator: *Morgan* v. *Shaw,* 47 Or. 336.

The settler upon government land has the right to divert the waters of a stream running through public land, and, to the extent that he actually appropriates and uses it, he has a vested right, and whoever afterwards purchases either above or below him, takes subject to that right: *Kaler* v. *Campbell,* 13 Or. 596.

Priority of appropriation gives priority of right, and rights of riparian owners when they attach are subject to the rights thus acquired: *Speake* v. *Hamilton,* 21 Or. 3.

A prior appropriator of water from a natural stream flowing through state lands has such a vested right to the use of the water and to the ditch through which it flows as will defeat the claim of one who, with a notice of the diversion, obtained a deed to the premises: *Carson* v. *Gentner,* 33 Or. 512.

A settler upon public lands through which a stream flows may either claim by appropriation or assert his riparian rights, but the uses are incompatible and he cannot claim by both: *Brown* v. *Baker,* 39 Or. 67.

It has been so often decided that it has become almost axiomatic that one who appropriates the waters of a stream running through public land acquires a special property therein, as against all persons acquiring rights subsequent in time, either as appropriators or as riparian proprietors, and as against such persons he may insist that the water shall be at all times subject to his use to the extent of his original appropriation: *Britt* v. *Reed,* 42 Or. 80.

Appropriators of the waters of a stream, whether as riparian owners or as owners by diversion, have priority of right in their chronological order of appropriation, and as between the several, the one showing the earlier appropriation is entitled to maintain it: *McCall* v. *Porter,* 42 Or. 49.

No adverse user can be initiated until the persons possessing the superior use are deprived of its benefit in such a substantial manner as to notify them that their rights are being invaded: *Bowman* v. *Bowman*, 35 Or. 279.

An appropriation of the waters of a stream for a beneficial use is an appropriation of all tributaries thereto above the point of original diversion: *Low* v. *Schaffer*, 24 Or. 239.

MR. JUSTICE EAKIN delivered the opinion of the court.

Plaintiffs are the owners of five water ditches involved in this suit, viz., the Wagner & Thornton ditch, the Beeson & Robison ditch, the Davenport ditch, the Rockfellow ditch, and the Farmers' ditch. The appropriations through these ditches were made at different times and in different amounts. Each plaintiff owns an interest in some one of these ditches, but they are not all interested in the same one, and, there being no controversy between them, they have made common cause against defendants. They take water out of Wagner Creek, a tributary of Bear Creek, in Jackson County, Oregon, claiming by prior appropriation and also by adverse user about 500 inches in all of the waters of said creek. Through two of these, the Davenport and Farmers' ditches, appropriations were made for both mining and irrigation purposes, and through the other three for irrigation only.

Plaintiffs allege ownership of the ditches and waters diverted thereby, without any allegation or proof as to the lands to which they are appurtenant or upon which they are used, but it is stipulated that whatever rights have been initiated through these ditches, are now owned by the plaintiffs in the manner alleged in the complaint, and no question is raised as to the lands to which they are appurtenant.

The Wagner & Thornton ditch was constructed in the year 1852; the Beeson & Robison ditch, in the spring of

1853; the Davenport ditch, in 1854; the Rockfellow ditch, in 1854; and the Farmers' ditch, in 1861.

J. A. McCall, a civil engineer, having measured the flow of plaintiffs' ditches, was called by plaintiffs to prove their capacity. From his testimony it appears that the Wagner & Thornton ditch has a capacity of 45 inches; the Beeson & Robison ditch, 85 inches; the Rockfellow ditch, 20 inches; the Davenport ditch, 50 inches; and the Farmers' ditch, 240 inches—all by miner's measurement, under a six-inch pressure.

1. At the commencement of the trial, plaintiffs moved the court to require the defendants to elect upon which of their incompatible defenses they will stand, viz., their riparian rights, or the claim by appropriation; but there is no merit in this motion, as defendants make no claim to the water by appropriation. They make two defenses, i. e., as riparian owners and by adverse user. These are not inconsistent defenses. Plaintiffs allege that defendants, severally, in the year 1903 diverted water from Wagner Creek above the head of· plaintiffs' ditches, and threaten to continue doing so, to the irreparable injury of plaintiffs, and ask that defendants be enjoined from diverting any water from said creek. Most of the lands upon which the waters of this creek are claimed by both plaintiffs and defendants were patented to their predecessors in interest by the United States government, under the donation land claim law; settlement on many of the claims having been made in the year 1853.

2. The lands of defendants Harry S. Lynch, Clara E. Lynch, Lilly R. Davis, and L. J. Davis are parts of the donation land claim of Granville Naylor, No. 37, which is above the head of the ditches of plaintiffs, and upon which settlement was made June 1, 1854, and for·which a patent was issued May 24, 1866. I take the date of this settlement from the recitals in the certificate of final entry, issued by the local United States land office, as it is evidence of the facts so recited: *Willamette Co.* v. *Gordon,* 6 Or. 175.

3. Defendants contend that, because the lands along the creek were settled in 1853, even those who made the first appropriation were riparian on the creek at the time of their appropriation, and therefore the use of the water must be adjusted according to their riparian rights, and not according to priority of diversion. But where the early settlers on a creek diverted water for irrigation, asserting their right by reason of their priority, they thereby acquired a, right against subsequent settlers, and, by reason of having done so, waived their riparian right to water for irrigation. It is said, in *Williams* v. *Altnow,* 51 Or. —— (95 Pac. 200, 209) : "It is the settled law in this State that an appropriator of water from a stream flowing through his premises has not the right, as riparian proprietor, to the use of the surplus for irrigation, as against subsequent claimants": *Low* v. *Schaffer,* 24 Or. 239 (33 Pac. 678) ; *North Powder Co.* v. *Coughanour,* 34 Or. 9 (54 Pac. 223) ; *Brown* v. *Baker,* 39 Or. 70 (65 Pac. 799, 66 Pac. 193).

4. While the doctrine of prior appropriation and riparian rights are not so antagonistic that they may not exist in the same locality (*Crawford Co.* v. *Hathaway,* 67 Neb. 325: 93 N. W. 781: 60 L. R. A. 889: 108 Am. St. Rep. 647), a settler upon a non-navigable stream has an election either to rely upon his rights as riparian proprietor or to make an appropriation of the water, if it is free and subject to appropriation, and claim as an appropriator; but he cannot do both.

As to the Rockfellow and Davenport ditches, defendants by their answer deny that Fred Rapp is the owner of the Davenport ditch or water right, and deny the existence of any right by means of said ditch, and by the cross-examination of plaintiffs' witnesses defendants contest that right. From the evidence it appears that the Davenport ditch was constructed in 1854, diverting principally for mining purposes probably 50 inches of water, as that is the capacity of the ditch. Thornton

testifies that there was some irrigation by means of the. Davenport ditch from that time by Rockfellow, who took the. water from that ditch by means of what might be called a lateral, known afterwards as the Rockfellow ditch. Thornton says:

"The Rockfellow ditch—that, I suppose, you call part of the Davenport ditch. That ditch—some of the water of the Davenport ditch—was used in the lower end of the Rockfellow ditch.

Q. How far back do you know that Rockfellow ditch? A. Well, I know that from about the same time—that is, they were digging the Davenport ditch at the time I landed there in that place, and when the ditch was finished Rockfellows used the water out of it."

Thornton arrived at Wagner Creek in June, 1854, evidently before the middle of the month. About the year 1881 or 1882 Thornton connected the Rockfellow ditch with the creek lower down and ceased to use the Davenport ditch as his means of diversion. This reduced the amount of water to which the Davenport ditch was entitled by that amount, namely, 20 inches. The remainder of the water of the Davenport ditch—which could not exceed 30 inches—was at one time claimed by Coolidge, and a part thereof used for a time by him for irrigation on his place in section 36, and about 1878 he sold his rights to Anderson for mining purposes, thereby abandoning it for irrigation. Anderson thereafter made no use of it for irrigation and but little use of it for mining. He says that he did not use it more than 8 or 10 years out of the 19 years preceding 1897; that he owned it for 25 years up to the time he sold it to Rapp, which sale was prior to the commencement of this suit. Thus it appears that from about 1878 the Davenport ditch was used exclusively for mining purposes.

5. The Farmers' ditch was dug originally as a mining ditch by Anderson and others. Some of the owners diverted a small amount of water from it for irrigation; but some years ago—the time does not appear—they all

leased their interests to Anderson for a term of 99 years, which was an abandonment of their irrigation rights, except Stearns, an owner therein and predecessor in interest to Purves and wife, who reserved his right to irrigate therefrom.

6. The use of these two ditches for mining purposes was confined to the mining season, namely, from the time the water began to rise in the creek in the fall until the water became scarce in the spring. They were constructed only to take the surplus water during that time. Anderson, speaking of the Farmers' ditch, says:

"I commenced (mining) just as soon as the rains came in the fall and I could get a reasonable head of water. I worked all winter and up to June.

Q. The head of that was shut off after the 1st of June, as a usual thing?

A. That was the understanding we had among ourselves.

Q. It was as a matter of fact?

A. Yes.

Q. As a matter of fact, the appropriation you claim to have made at that time was simply made up to the time the farmers would irrigate or wanted the water for irrigation, about the 1st of June?

A. When we formed this association to dig this ditch, this thing was discussed fully—about when this water should be turned out of this ditch. * * There was an agreement drawn up between us, and it was maintained by the other parties that we put that in that writing— the 1st of June. Time passed on, and I says, 'If it is in it I have forgotten it.'

Q. You always recognized that, though?

A. Yes, we acted on that basis. I consider we recognized it."

And in speaking of the use of the water through the Farmers' ditch for irrigation on the Stearns place in August one year, he says:

"Of course, it was an exception to the rule we worked on.

Q. As a matter of fact they didn't take water out to irrigate with as a usual thing after the 1st of June?

A. No, sir; and I would not expect to do it this year, unless there was a quantity of water.

Q. So that the irrigation that ditch was put to for many years in the early days was up to the 1st of June?

A. Yes, that is practically a fact. Yes, sir; that was the working of it."

He also says that during the time he owned the Davenport ditch he used it in mining during the winter months and up to the 1st of June—up to the irrigating season. "That is the way we used it." Hence there does not exist in the owners of either the Farmers' ditch or the Davenport ditch any right to divert water thereby after the 1st of June. An appropriation of water is limited in every case, in quantity as well as for the period of time for which the appropriation is made: *Simmons* v. *Winters,* 21 Or. 35 (27 Pac. 7: 28 Am. St. Rep. 727) ; *McPhee* v. *Kelsey,* 44 Or. 193 (74 Pac. 401, 75 Pac. 713) ; *Barnes* v. *Sabron,* 10 Nev. 217; *Atchison* v. *Peterson,* 87 U. S. (20 Wall.) 507, 514 (22 L. Ed. 414).

7. In addition to this, it appears that defendants have acquired a right to their use of the water, as against Anderson, by adverse user. Anderson contends: That there was a shortage, caused by the use made of the water by defendants, complained of in the complaint; that he could detect it for a number of years past; that it was cutting down the rights of those below; and that he had mentioned to the men below that, if the thing went on, in a few years the water would all be appropriated by them. He admits that he observed this water shortening up for the last 8 or 10 years, that it is quite probable that he noticed it before that time, and practically admits that for 15 years there was a shortage. It is also established that this use of the water by the defendants who appeal has been continuous for 12 or 15 years prior to the commencement of this suit. And this constitutes such an adverse user thereof as has rip-

ened into a right or title in favor of the respective defendants as against plaintiff Anderson, as owner of the Davenport and Farmers' ditches.

· 8. It is urged by defendants that, prior to the act of Congress of July 26, 1866 (14 Stat. 252, c. 262, § 9 [U. S. Comp. St. 1901, p. 1437]), which recognizes the right of a prior appropriator upon government land to the water of a stream, the title to the water remained in the government and passed with the land to the patentee, to the exclusion of the prior appropriator, and that the effect of the Naylor patent was to cut off all claim to the water by the prior appropriation of plaintiffs; but we deem this question disposed of against defendants' contention by the United States courts, as well as by the Supreme Court of Oregon. It is held in *Broder* v. *Natoma Water Co.* 101 U. S. (11 Otto.) 274 (25 L. Ed. 790), that the act of 1866 was rather a recognition of a pre-existing right of possession of the water, constituting a valid claim to its continued use, than the establishment of a new one, and that the claim to the water by prior appropriation was valid even against a patent issued prior to 1866. In *Jones* v. *Adams*, 19 Nev. 78 (6 Pac. 442: 3 Am. St. Rep. 788) it is held that notwithstanding title to the riparian land was obtained from the United States prior to the act of July 26, 1866, the prior appropriator of water from a stream flowing through that land acquired a good title thereto. To the same effect are *Parkersville Drainage Dist.* v. *Wattier*, 48 Or. 332 (86 Pac. 775); *Carson* v. *Gentner*, 33 Or. 512 (52 Pac. 506: 43 L. R. A. 130); *Isaacs* v. *Barber*, 10 Wash. 124 (38 Pac. 871: 30 L. R. A. 665: 45 Am. St. Rep. 772).

9. Plaintiffs offered in evidence a copy of a decree of the Circuit Court of Jackson County, in the case of *Joseph Robison* v. *George H. Lynch*, in which the defendant, George H. Lynch, his agents, servants and employes, and all persons claiming by, through or under him, are restrained from diverting any water from Wag-

ner Creek above the lands of plaintiff. If this decree were available to plaintiffs as a defense against the claim of defendants, it would be in the nature of an estoppel, which must be pleaded.

10. Furthermore, the complaint upon which this decree was based is offered in evidence by the defendant, from which it appears that the plaintiff therein based his right to the injunction wholly upon his lower riparian right, without any specific designation of his lands or any specific claim to water, either as to quantity or place of use. Neither in the complaint nor in the decree is it alleged that the defendant, George H. Lynch, owned any particular lands, or to what lands he was diverting water. Therefore there is nothing to which there could be a successor in interest to Lynch, to be affected by the decree, and for the same reason the decree cannot operate in favor of any successor in interest of the plaintiff —at least from anything that appears in this record.

11. Again, the decree is based upon plaintiffs' riparian rights. On no other theory could the court forbid the defendant taking any water out of the creek. If it were sought by that decree to protect the interests now claimed by these plaintiffs, viz., rights acquired by prior appropriation, it should have specified such rights, and that would be the limit of the restraint on the defendant. Therefore these defendants are not affected by that decree.

12. Plaintiffs also allege title to the waters claimed by them by adverse user, but a use of water is not adverse until it becomes an infringement upon another's right. To give the plaintiffs title to the water by adverse user, it must appear that the use of the water by them interfered with the defendants' rights to such an extent that defendants would have had a cause of action against them therefor: *North Powder Co.* v. *Coughanour,* 34 Or. 9 (54 Pac. 223) ; *Wimer* v. *Simmons,* 27 Or. 1 (39 Pac. 6 : 50 Am. St. Rep. 685) ; *Boyce* v. *Cupper,* 37 Or.

256 (61 Pac. 642) ; *Anderson* v. *Bassman* (C. C.), 140 Fed. 10. And in case the party against whom such adverse user is asserted, is an upper riparian owner, it is difficult to conceive of a case where the use of the water by a lower diversion can be adverse : *Beers* v. *Sharpe,* 44 Or. 386 (75 Pac. 717). It is said in *Crawford Co.* v. *Hathaway,* 67 Neb. 325 (93 N. W. 781 : 60 L. R. A. 889 : 108 Am. St. Rep. 647), that "there cannot be in the very nature of things any such thing as a prescriptive right of a lower riparian owner to receive water of a stream as against upper owners."

13. We conclude that the Wagner & Thornton ditch, to the extent of 45 inches of water, and the Beeson & Robison ditch, to the extent of 85 inches, are prior in time to the settlement of any of the claims above the head thereof, and the Rockfellow ditch, to the extent of 20 inches, is at least concurrent with, if not also prior to, such settlement, and therefore superior in right to the claim of any of the defendants; and defendants should be enjoined from such interference with the flow of the water of Wagner Creek and its tributaries as will prevent the flow to the head of the Wagner & Thornton ditch of 45 inches, to the head of the Beeson & Robison ditch of 85 inches, and to the head of the Rockfellow ditch of 20 inches—all in miner's inches under a six-inch pressure—when such quantities are needed and used by the owners thereof.

The decree of the lower court is modified accordingly, and the defendants shall recover their costs in this court.

MODIFIED.